Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTINA ROSALEZ,

    Plaintiff,

  v.

KENNETH D. BAKER, M.D.,
AUBURN REGIONAL MEDICAL CENTER,
a Washington corporation, *et al.*,

    Defendants.

C09-0065-JCC

**ORDER**

This matter comes before the Court on the motion for summary judgment of Defendant Auburn Regional Medical Center. (Dkt. No. 79). In addition to Defendant's motion, the Court has also considered Plaintiff's responsive pleading (Dkt. No. 86), and Defendant's reply thereto (Dkt. No. 90), along with the parties' various exhibits and declarations. Also before the Court is the motion for summary judgment of Defendant Kenneth D. Baker. (Dkt. No. 82). The motion is unopposed.

Having reviewed the relevant record and concluded that oral argument is unnecessary, the Court hereby GRANTS the motion of Defendant Auburn Regional Medical Center. (Dkt. No. 79). The Court also GRANTS the motion of Defendant Kenneth D. Baker. (Dkt. No. 82).

Plaintiff's claims against Defendant Auburn Regional Medical Center and against Defendant Kenneth D. Baker are therefore DISMISSED with prejudice. Plaintiff's claims against other defendants are unaffected by this order.

## I.      BACKGROUND

This case sounds in allegations of medical malpractice. In March 2004, Plaintiff Martina Rosalez reported to the emergency room of the Auburn Regional Medical Center, complaining of abdominal pain and vomiting. Dr. Kenneth D. Baker diagnosed Plaintiff with symptomatic cholelithiasis, and performed emergency surgery to remove her gallbladder. (Baker Decl. 1 (Dkt. No. 84)). The surgery did *not* require the placement of a stent. (*Id.* 2).

Because he was unable to remove certain impacted gall stones, however, Dr. Baker referred Plaintiff to Dr. Klaus Mergener for further surgery. (*Id.*). Medical records indicate that Dr. Mergener performed a second surgery on April 1, 2004, and that this second surgery involved the installation of a stent. Before the surgery was begun, Plaintiff signed an informed-consent form which listed "stent placement" as part of the planned procedure. (Records (Dkt. No. 85 at 12)). Records further indicate that Dr. Mergener instructed Plaintiff to return to the hospital one month after surgery so that the stent could be removed. (*Id.* 14). Finally, medical records indicate that Dr. Mergener or his agent telephoned Plaintiff on several separate occasions in late May and early June 2004 to remind her to return to the hospital for the stent to be removed. (*Id.*). Medical records nowhere indicate that Plaintiff returned Dr. Mergener's phone calls or otherwise took steps to have the stent removed, and Plaintiff nowhere avers that she in fact took such steps.

In September 2007, Plaintiff returned to the emergency room of the Auburn Regional Medical Center, complaining of a fever, flu-like symptoms, and abdominal pain. (Records (Dkt. No. 80-1 at 15)). Dr. Jeremiah Ojeaburu examined Plaintiff and concluded that a likely source of her symptoms was the stent, which had never been removed from her body. Dr. Ojeaburu performed surgery on September 21, 2007, and successfully removed the stent. In relevant part, the pre-surgery report of Dr. Ojeaburu reads:

> This is a fifty-nine-year-old woman with intermittent epigastric pain. She underwent laparoscopic cholescystectomy by Dr. Kenneth Baker on May 30, 2004, for acute calculus cholecystitis. Cyolecystectomy was complicated by a bile leak and the patient had endoscopic retrograde cholangiopancreatography with sphincterotomy and biliary

> stenting by Dr. Klaus Mergener on April 1, 2004. The patient was advised to follow up a month later for removal of the stent, but she never did. I have confirmed that multiple calls placed to the patient by our office, including cards sent, were not returned and that the patient did not have the stent removed.

(*Id.*).

Plaintiff alleges that Dr. Baker, Dr. Mergener, and several unnamed doctors were negligent for having left the stent inside her body after the April 2004 surgery, and for having failed "to properly assure and monitor [her] physical well-being during and after the surgery." (Amended Complaint 6 (Dkt. No. 22 at 11)).

Plaintiff also alleges that Auburn Regional Medical Center and other corporate defendants are liable for her injuries. (*Id.* 2). Plaintiff nowhere alleges, however, that Dr. Baker and Dr. Mergener were employees or otherwise the direct agents of Auburn Regional Medical Center. According to the chief operating officer of the Center, they were not. As he states: "Neither Dr. Baker nor Dr. Mergener are or ever have been employees of the Auburn Regional Medical Center." (Dickens Decl. 2 (Dkt. No. 78)).

## A. Procedural Background

Plaintiff filed the complaint in this matter in the King County Superior Court on November 18, 2008. (Dkt. No. 2 at 15–23). The matter was removed to this Court on January 16, 2009, pursuant to federal-question jurisdiction conferred by Congress as part of 1970 amendments to the Public Health Service Act of 1944, *codified as amended at* 42 U.S.C. § 233. Plaintiff filed an amended complaint in April 2009. (Dkt. No. 22).

Since then, this case has proceeded slowly and with difficulty. Because Plaintiff failed to file a certificate of merit with her complaint, as required by the law of Washington State, *see* WASH. REV. CODE § 7.70.150, Defendants filed a proper motion to dismiss. (Dkt. No. 26). Acknowledging that Defendants' motion had merit because Plaintiff had "failed to follow all technical requirements of [Washington State law]," this Court nonetheless "decline[d] to dismiss Plaintiff's claims based on a technicality that is of little consequence under the circumstances." (Order 4–5 (Dkt. No. 40)). The Court therefore ordered

ORDER, C09-0065-JCC
Page 3

Plaintiff to file the certificate of merit long after the deadline had technically passed. (*Id.*). Shortly thereafter, Plaintiff commenced three separate cases in the District Court for the Western District of Washington, naming new defendants in each but alleging the same nucleus of facts against them all. On October 20, 2009, this Court consolidated all the newly filed cases with this case. (Order (Dkt. No. 43)).

Discovery disputes have also slowed the case's progress. Plaintiff refused to answer certain interrogatories served upon her by Defendant Auburn Regional Medical Center. (*See* Motion to Compel (Dkt. No. 61)). Specifically, Plaintiff refused to list the expenses she had incurred as a result of her alleged injuries, and whether any charitable organization or other third party had contributed to those costs. (Interrogatories 2 (Dkt. No. 62 at 6)). Plaintiff also refused to describe the injuries she alleges to have suffered as a result of the allegedly wrongful acts of Defendants. (*Id.* 3). Finally, Plaintiff refused to "describe with particularity each and every wrongful act or omission of all defendants;" to identify which defendant was responsible for each particular wrongful act; and to identify the date on which the alleged wrongful act occurred. (*Id.* 8–9). In an order issued in June 2010, this Court ordered Plaintiff to answer the interrogatories fully and completely. (Order (Dkt. No. 74)). An additional motion to compel remains pending before this Court. (Motion (Dkt. No. 95)). Defendant Klaus Mergener asks this Court to order Plaintiff to respond to requests for production first served on Plaintiff in June 2010. (*Id.*).

**B.  Motions for Summary Judgment**

Defendant Auburn Regional Medical Center filed the motion for summary judgment now before the Court on July 8, 2010. Among other theories, Defendant Auburn Regional argued that summary judgment is proper because Plaintiff cannot produce any evidence tending to show that the doctors who performed the 2004 operations were its agents. As stated in Defendant's motion: "Neither the emergency-room physicians, radiologists, Dr. Kenneth Baker, nor Dr. Klaus Mergener were employees of [Defendant Auburn Regional]. Therefore, none was an express agent of [Auburn Regional] and no *respondeat superior* liability exists." (Motion 14 (Dkt. No. 79)).

By operation of Local Rule CR 7, Plaintiff's response brief to Defendant's motion was due by July 26, 2010. *See* LOCAL RULE W.D. WASH. CR 7(d). On that very day, Plaintiff filed a responsive pleading. The pleading's caption describes the pleading as a motion to continue Defendant's underlying motion for summary judgment, and refers to Rule 56(f) of the Federal Rules of Civil Procedure. (Pleading (Dkt. No. 86)). Plaintiff devotes approximately one page of that pleading to her argument that the motion should be continued. (*Id.* 2–3). In the remaining portion of the pleading, Plaintiff argues the merits of Defendant's motion for summary judgment. Plaintiff implicitly concedes that none of the treating physicians was an agent of Defendant Auburn Regional, but nonetheless argues that summary judgment is improper because Defendant Auburn Regional is liable under the common-law doctrine of apparent agency. (*Id.* 5–8).

Defendant Kenneth Baker filed a separate motion for summary judgment on July 26, 2010. (Motion (Dkt. No. 82)). He argues that dismissal is proper because Plaintiff cannot produce any evidence tending to indicate that he was negligent in any way. Noting that Plaintiff's theory of the case revolves around the allegedly negligent placement of a stent, Defendant Kenneth Baker argues that he cannot be held liable because he never installed a stent during the surgery he performed. (Motion 10–12 (Dkt. No. 82)). As he states: "[T]he indisputable evidence is that Dr. Baker *did not* place a stent in [Plaintiff]." (*Id.* 10) (emphasis in original).

Plaintiff never filed a response brief to the motion for summary judgment of Defendant Kenneth Baker. By operation of Local Rule CR 7, her response brief was due on August 16, 2010. *See* LOCAL RULE W.D. WASH. CR 7(d).

**II.    LEGAL STANDARD**

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Under the terms of the Rule, a defendant is entitled to move for summary judgment by alleging that the materials in the record demonstrate that the plaintiff cannot produce any admissible evidence to support an essential element of his or her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). To overcome

such a motion, the plaintiff bears the burden of producing such evidence with respect to the identified element. As the Supreme Court has stated, "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. Such a procedure protects defendants from being forced to expend substantial time and energy litigating claims that are without merit. *Id.* at 323 ("One of the principal purposes of the summary-judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]").

Under Rule 56(f), this Court can refuse to consider a motion for summary judgment or continue the motion for a time whenever "a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition[.]" FED. R. CIV. P. 56(f). The Rule is most often invoked by litigants "when they have not had sufficient time to develop affirmative evidence." *Burlington Northern Santa Fe R.R. Co. v. Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003). When a motion for summary judgment is filed extremely early in the litigation process, "before a party has had any realistic opportunity to pursue discovery relating to its theory of the case," Ninth Circuit precedent requires that this Court grant a motion brought under Rule 56(f) "fairly freely." *Id.* (allowing the defendant additional time to conduct discovery when the plaintiff filed a motion for summary judgment only one month after filing suit).

When a motion for summary judgment is filed later in the litigation process, this Court may continue the motion only if the party opposing the motion demonstrates "(1) it has set forth in affidavit the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Finance Center v. Federal Home Loan Mortgage Co.*, 525 F.3d 822, 827 (9th Cir. 2008). In addition, the party must demonstrate that it has diligently pursued discovery throughout the litigation process. *Mackey v. Pioneer National*

*Bank*, 867 F.2d 520 (9th Cir. 1989). If a party that seeks a continuance fails to meet those requirements, this Court denies the motion to continue proceedings. The Court instead proceeds to consideration of the merits of the underlying motion for summary judgment, and adjudicates the parties' respective rights without delay. *Family Home & Finance Center*, 525 F.3d at 827.

Under no circumstances can a party successfully oppose a properly supported motion for summary judgment by failing to respond. As the plain terms of Rule 56 provide:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this Rule—set out specific facts showing a genuine issue for trial. *If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.*

FED. R. CIV. P. 56(e) (emphasis added). The Local Rules of the Western District of Washington reinforce an opposing party's obligation to respond to a properly supported motion for summary judgment. As stated in Local Rule CR 7: "If a party fails to file papers in opposition to a motion, *such failure may be considered by the court as an admission that the motion has merit.*" LOCAL RULE W.D. WASH. CR 7(b)(2) (emphasis added).

### III. RELEVANT LAW

Under the common-law doctrine of *respondeat superior*, a principal can be held liable for the tortious acts of its agent. As the Washington State Supreme Court has stated: "Vicarious liability, otherwise known as *respondeat superior*, imposes liability on an employer for the torts of an employee who is acting on the employer's behalf." *Niece v. Elmview Group Home*, 929 P.2d 420, 425–26 (Wash. 1997). A party generally cannot be held liable under the doctrine of *respondeat superior* for the negligent acts of an independent contractor. *Miles v. Pound Motor Co.*, 117 P.2d 179, 182 (Wash. 1941). Whether an individual who commits a tortious act is an employee or an independent contractor generally depends on whether the principal exercises control over the individual's decisions. *Hollingberry v. Dunn*, 411 P.2d 431, 435 (Wash. 1966).

Because "[t]he experience of the courts has been that application of hornbook rules of agency to the hospital-physician relationship usually leads to unrealistic and unsatisfactory results," special rules govern the nature of the relationship between hospital corporations and medical professionals. *Adamski v. Tacoma General Hospital*, 579 P.2d 970, 974 (Wash. Ct. App. 1978). Under these special rules, a doctor stands in an agent-principal relationship with a hospital when the patient seeks treatment primarily from the hospital rather than from the doctor, and when the hospital pays the doctor a salary. *Id.* at 975. Under these rules, hospitals are today therefore generally held liable for the negligent actions of their interns and resident physicians. *Id.* These rules have never been interpreted to automatically create a principal-agent relationship between a hospital and any doctor that uses its facilities, however: "[W]here the patient contacts his personal physician and is by him admitted to a hospital for treatment, and the doctor looks directly to the patient for his fees, the courts uniformly treat the physician as an independent contractor." *Id.* The legal consequence follows: "Such a holding results in a refusal to impose vicarious liability upon the hospital for the physician's medical mistakes even though they may occur on hospital premises." *Id.*

**A.    Apparent Agency**

A hospital can also be found liable for the actions of the doctors who use its facilities under the common-law theory of apparent agency, even if the doctors were independent contractors. *Adamski*, 579 P.2d at 977. The Restatement (Second) of Agency defines the doctrine of apparent agency:

> One who represents that another is his servant or other agent and thereby causes a third person to justifiably rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.

RESTATEMENT (SECOND) OF AGENCY § 267 (cited with approval in *Adamski*, 579 P.2d at 977–78).

In order to recover under the theory of apparent agency, a plaintiff must therefore show that she subjectively believed that the doctor was the agent of the hospital, and that her subjective belief was objectively reasonable. She must also show that her good-faith reasonable belief is attributable to

ORDER, C09-0065-JCC
Page 8

1 actions taken by the purported principal, or to the purported principal's failure to act when action would
2 have been required to dispel her reasonable misunderstanding. *Adamski*, 579 P.2d at 978.

## IV. DISCUSSION

Plaintiff nowhere offers any evidence tending to indicate that Defendant Auburn Regional paid the allegedly negligent doctors a salary. Defendant, on the other hand, submits undisputed evidence that the doctors were never its employees. Because Plaintiff nowhere offers any evidence tending to indicate that any of the treating physicians who performed the 2004 surgeries were acting as the actual agents of Defendant Auburn Regional, she cannot prevail against the hospital under the traditional doctrine of *respondeat superior. See Miles*, 117 P.2d at 182 (requiring that a principal-agent relationship be established in order for tort liability to attach to the purported principal).

Plaintiff nowhere offers any evidence tending to indicate that Defendant Auburn Regional represented the doctors to be its agents, or any evidence tending to indicate that Defendant Auburn Regional stood mute when circumstances required the hospital to clarify confusion. Plaintiff nowhere points to a single thing done or said by an employee of Defendant Auburn Regional that would have caused a reasonable third person to conclude that the treating physicians were agents of the hospital. Without such evidence, she cannot rely upon the theory of apparent agency to hold the hospital liable. *See Adamski*, 579 P.2d at 977. Summary judgment is therefore required.

Plaintiff represents in her pleading that she will be able to produce such evidence if she "is given sufficient time to conduct the necessary discovery." (Pleading 8 (Dkt. No. 86)). Plaintiff reports that she requires time in order to gather evidence such as, *inter alia*, her own testimony. As her pleading states: "[Plaintiff's] testimony regarding whether she sought treatment primarily from the hospital or from Dr. Mergener and whether [Auburn Regional] made any representations to [Plaintiff] regarding its relationship with Dr. Mergener must be obtained. This information will shortly be obtained by Plaintiff's counsel[.]" (*Id.* 8). In a supporting affidavit submitted along with her pleading, Plaintiff's

1  counsel nowhere explains why he has failed to obtain his own client's testimony. (Dore Decl. (Dkt. No.
2  87)). Plaintiff also reports that she requires additional time to inquire into the nature of the hospital-
3  physician agreement between Auburn Regional and the doctors whom she has named as defendants. Her
4  pleading states: "This information must be obtained by discovery requests to [Auburn Regional], which
5  Plaintiff's counsel anticipates will be shortly submitted." (*Id.*).

6  In short, Plaintiff responds to the motion for summary judgment of Defendant Auburn Regional
7  by submitting only the *promise* of evidence, and not evidence itself. Under the plain terms of Rule 56,
8  more is required. Under the plain terms of the Rule, actual evidence is required. As the Rule states in
9  relevant part, "When a motion for summary judgment is properly made and supported, an opposing
10 party may not rely merely on allegations or denials in its own pleading; rather, its response must—*by*
11 *affidavits or as otherwise provided in this rule*—set out specific facts showing a genuine issue for trial."
12 FED. R. CIV. P. 56(e)(2) (emphasis added). Because Rule 56 nowhere allows a party to successfully
13 overcome a proper motion for summary judgment with only a promise to submit evidence at some later
14 date, and because Plaintiff submits only such promises, summary judgment for Defendant Auburn
15 Regional Medical Center is proper.

16 **A.     Plaintiff's Motion to Continue**

17 In part, Plaintiff's responsive pleading asks this Court to continue the underlying motion for
18 summary judgment. Plaintiff's motion to continue the summary-judgment motion fails, in part because
19 neither her pleading nor supporting affidavit demonstrates the existence of specific facts which Plaintiff
20 requires in order to successfully overcome Defendant's motion for summary judgment. Instead, the
21 affidavit contains a verbatim recital of the Washington State pattern jury instructions for cases involving
22 apparent agency in the context of hospital-physician relationships, with the names of the parties in place
23 of the general terms "hospital" and "patient." For example, the Washington State pattern jury instructions
24 require that jurors consider, *inter alia*, "whether the hospital handled the billing for the services of the

physician," and "whether the patient sought treatment primarily from the hospital or the physician." WASH. PATTERN JURY INSTR. CIV. 105.02.03. The affidavit submitted in support of Plaintiff's pleading states that further discovery will elicit, *inter alia*, "whether the hospital handled the billing for the services for Dr. Mergener and the other relevant health-care providers," and "whether [Plaintiff] sought treatment primarily from the hospital or from Dr. Mergener." (Dore Decl. 2 (Dkt. No. 87)).

Plaintiff bears the burden of demonstrating that (1) she has set forth the specific facts she hopes to elicit during further discovery; (2) the existence of such facts; and (3) that such facts are essential to oppose summary judgment. *Family Home & Finance Center*, 525 F. 3d at 827. Plaintiff cannot meet these requirements simply by reciting pattern jury instructions. This Court therefore cannot grant the relief she requests.

Plaintiff's motion to continue the underlying motion for summary judgment also fails because she cannot demonstrate that she has diligently pursued discovery. Plaintiff filed the initial complaint in this case in November 2008, almost two years ago. The amended complaint was filed approximately one year and a half ago, in April 2009. This is adequate time to have secured *some quantum of evidence* with respect to the nature of the relationship between Defendant Auburn Regional and the doctors whom Plaintiff also named as defendants. It is certainly enough time for Plaintiff's counsel to have obtained *the testimony of his own client* with respect to the issue at hand. He has nonetheless failed to do so. These failures to diligently pursue evidence preclude the relief that Plaintiff seeks.

Given that almost two years have passed since this case was commenced, and given the failure of Plaintiff and her counsel to have acquired her own testimony or any other evidence with respect to a determinative issue, this Court cannot conclude that she has pursued discovery with diligence. This Court must therefore deny the motion to continue the underlying motion for summary judgment. To hold otherwise would intrude upon the procedural rights of Defendant Auburn Regional, forcing it to expend even further time and energy litigating claims that are without merit. *See Celotex*, 477 U.S. at 323.

ORDER, C09-0065-JCC
Page 11

**B.     Motion for Summary Judgment of Kenneth D. Baker**

Because Plaintiff's pleadings indicate that her theory of the case revolves around the allegedly negligent installation of a stent, and because the uncontradicted evidence indicates that Defendant Kenneth D. Baker had nothing to do with the installation of the stent, summary judgment is proper.

Plaintiff's failure to respond to Defendant's properly filed and supported motion concedes the point. The Local Rules are clear, stating in relevant part that "[i]f a party fails to file paper in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." LOCAL RULE W.D. WASH. CR 7(b)(2). Because Plaintiff's own pleadings indicate that Defendant Kenneth D. Baker was uninvolved in the stent placement, this Court interprets her failure to file a responsive pleading as an admission that Defendant's motion for summary judgment is meritorious. The Court therefore grants the motion for summary judgment of Defendant Kenneth D. Baker, and dismisses all of Plaintiff's claims against him.

**V.     CONCLUSION**

For the aforementioned reasons, the Court hereby GRANTS the motion for summary judgment of Defendant Auburn Regional Medical Center. (Dkt. No. 79). The Court also GRANTS the motion for summary judgment of Defendant Kenneth D. Baker. (Dkt. No. 82).

The Court therefore DISMISSES Plaintiff's claims against Defendant Auburn Regional Medical Center and Defendant Kenneth D. Baker. The claims are dismissed with prejudice. Plaintiff's claims against other defendants are unaffected by this order.

SO ORDERED this 15th day of October, 2010.

JOHN C. COUGHENOUR
United States District Judge